# EXHIBIT F

CAUSE NO. D-1-GN-16-001595

| | | |
|---|---|---|
| SARAH SOISSON | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| NUANCE COMMUNICATIONS, INC. | § § | |
| Defendant. | § § | 345th JUDICIAL DISTRICT |

# PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff, **SARAH SOISSON**, files this First Amended Petition and shows:

## I.
### DISCOVERY LEVEL

Discovery is intended to be conducted under Level 2 pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

## II.
### PARTIES

1. Plaintiff Sarah Soisson is an individual who resides in Travis County, Texas.

2. Defendant Nuance Communications, Inc., has been properly served and made an appearance in this case.

## III.
### JURISDICTION AND VENUE

3. This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

4.     Venue is proper pursuant to §15.001, et seq. of the Texas Civil Practice & Remedies Code.

## IV.
## FACTUAL BACKGROUND

5.     Plaintiff Sarah Soisson currently works as a Senior Consultant for Nuance Communications, Inc. in its Health Information Management Division. In such role, Soisson is responsible for providing revenue cycle consulting services to acute care hospitals.

6.     On September 25, 2015, Soisson's second-level supervisor, Jeff Wieters, sent an email to Soisson and others on her team regarding a project known as the "University Illinois Chicago audit." Per such email, Wieters admitted that he had closed the contract with the client and had immediately recognized "significant services revenue" knowing that the work was not complete and would not be complete for the immediate future. Such notice was of great concern to Soisson as she knew and had reasonable cause to believe that such action was violative of SEC regulations and other state and federal law.

7.     During her employment, Soisson was provided a copy of the Nuance Whistleblowing policy. Such policy (attached hereto) provides a written assurance to all employees that they "will not be at risk of any detriment" as a result of raising a genuine concern that a violation of the law has occurred or will occur. "Detrimental treatment" is defined as dismissal, disciplinary action, threats, or other unfavorable treatment regarding their employment. Also during her employment, Soisson was

promised by Nuance Legal that she would not be retaliated against for reporting in good faith a violation of the law.

8. Relying on the representations made by Nuance, Soisson immediately reported the actions of Jeff Wieters and the improper revenue recognition to three (3) levels of management within her reporting structure at Nuance, as well as to Human Resources and to Donna Bonno Director, HIM Professional Services. Soisson also noted that the early reporting of revenue prior to meeting the necessary "milestone" was a systemic problem within Nuance.

9. The very same day, on September 25, 2015, after reporting the improper revenue recognition issue, Soisson was taken off the "Commercial team" that she had been working on and placed on the "Government team."

10. Within approximately one month after reporting the actions of Jeff Wieters to upper management, Soisson received her worst performance review since she has been employed with Nuance. Such review should have been performed by Soisson's immediate supervisor during the review period, Lisa Baris. However, such review was taken over and performed instead by Jeff Wieters. Such review was so poor that it greatly affected her bonus and her expected increase in salary.

11. Subsequent to the review, Soisson raised her complaints again to Human Resources and to Nuance Legal. In addition to the systemic revenue recognition issues Soisson also complained that she has been regularly asked to under-report her hours of work on various projects. Since raising her complaints, she has been retaliated against by being given unfair criticism of her work performance, being taken off a key work project for no legitimate reason, and being

3

told she was acting in an insubordinate manner toward Mr. Wieters when she asked for guidance on a new project. All of the actions taken by Nuance management have been designed to set up Soisson for termination.

12. As a direct result of the retaliation, Soisson has experienced significant stress and anxiety which has caused her to seek medical attention. Such medical provider has recommended that Soisson take time off from work. Thus, Soisson has applied for FMLA leave and short term disability.

## V.
## CAUSES OF ACTION

### Misrepresentation/Detrimental Reliance

13. Nuance represented in writing that Soisson would not be retaliated against for reporting what she in good faith believed to be violations of law by management. Soisson relied on such representation in making her reports. The representations were false as Nuance management has since retaliated against Soisson causing her significant damages.

### Breach of Contract

14. Nuance agreed in writing and verbally that it would not taking any detrimental action against Soisson for reporting a violation of the law. Nuance breached such agreement by providing Soisson with a poor performance review which led to a failure to pay Soisson a proper bonus and a failure to adequately increase her salary. Soisson has also suffered detrimental action in the form of work assignments and harassment.

## VI.
## ATTORNEYS' FEES

15.     Pursuant to Section 37.001, et. seq. of the Texas Civil Practices & Remedies Code, Plaintiff seeks his reasonable and necessary attorneys' fees in collecting all amounts due and owing. Demand for all amounts due will have been made greater than thirty (30) days before trial.

## VII.
## DAMAGES

16.     Plaintiff seeks the following damages:

   (1)   Lost Bonus;
   (2)   Back pay and front pay;
   (3)   Mental Anguish;
   (4)   Attorneys' fees;
   (5)   Costs of court; and,
   (6)   Pre judgment and post-judgment interest.

The amount of Plaintiff's damages at the time of the filing of this petition is in not less than $200,000.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, that upon final trial hereof, Plaintiff recovers her actual and exemplary damages, plus reasonable attorneys' fees and costs of court and both pre- and post-judgment interest at the legal rate, and for such other and further relief, both general and special, at law and in equity, to which she may show herself justly entitled under all attending facts and circumstances. **Plaintiff requests a jury trial.**

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN** LLP

_____
Mark G. Lazarz
TBA #12069100
11 Greenway Plaza
Suite 1515
Houston, Texas 77046
mlazarz@eeoc.net
Tel: (713) 621-2277
Fax: (713) 621-0993

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record pursuant to the electronic filing system for the State of Texas on this the 10th day of May 2016.

Earl M. (Chip) Jones, III
Allison E. Moore
**LITTLER MENDELSON, P.C.**
100 Congress Avenue, Suite 2000
Austin, TX 78701

_____
MARK G. LAZARZ



# WHISTLEBLOWING POLICY

Version 1.1

April 17, 2015


WHISTLEBLOWING POLICY

**Version Control Details:**

| Version | Date | Author | Comments |
|---|---|---|---|
| 1.0 | 18/11/13 | Melissa Francis | Final version |
| 1.1 | 17/04/15 | Julie Gordon | Review and update |
|  |  |  |  |

# CONTENTS

1. SCOPE ................................................................................................................................... 3
2. POLICY STATEMENT ........................................................................................................ 3
3. PRINCIPLES ........................................................................................................................ 3
4. ASSURANCE TO EMPLOYEES ......................................................................................... 4
    4.1. Employee Protection ................................................................................................. 4
    4.2. Employee Confidence ................................................................................................ 4
5. RAISING A CONCERN ....................................................................................................... 5
    5.1. Internal Management ................................................................................................ 5
    5.2. Alternative Contacts .................................................................................................. 5
6. HANDLING A CONCERN .................................................................................................. 5
7. EXTERNAL DISCLOSURES ............................................................................................... 6



WHISTLEBLOWING POLICY

## 1. Scope

This policy applies to all employees of the Nuance Group in the UK, whether full time, part time, permanent, fixed term or temporary.

## 2. Policy Statement

Nuance has a policy of fair dealing, honesty and integrity which extends to all members of the Company. Nuance is firmly committed to maintaining the highest standards of ethics, honesty, openness and accountability. It recognises that all of its employees have an important role to play in achieving this goal. More information can be found in the Company's Global Code of Business Conduct and Ethics.

From time to time, employees may have concerns about events that happen at work. Usually these concerns are easily resolved. However, it can be difficult to know what to do if the issue concerns breaches of the law, serious misconduct by another person, health and safety or financial malpractice.

If employees have a genuine and well-founded concern, the Company Whistleblowing Policy enables them to raise it in an appropriate, confidential and effective way.

If employees have such a concern, which they think should be reported and investigated, they should follow this Policy. It should be emphasised that employees should always try to deal with any concerns first of all through their Line Manager and only follow the other available routes detailed in this Policy if that is not possible. All matters will be treated in the strictest confidence.

This Policy is designed to protect those raising a genuine concern from detriment and unfair dismissal, in compliance with the Public Interest Disclosure Act 1998.

This Policy is non-contractual and without prejudice to your statutory rights. This Policy may be changed or amended from time to time; revised versions will be available on the Company's intranet site, the Voice.

## 3. Principles

The Public Interest Disclosure Act 1998 (commonly known as the 'Whistleblowing Act') sets out a framework to promote the responsible and protected disclosure of concerns on the following matters:

- That a criminal offence has been committed, is being committed or is likely to be committed;
- That a person has failed, is failing or is likely to fail to comply with any legal obligations which they are subject to;
- That a miscarriage of justice has occurred, is occurring or is likely to occur;
- That the health and safety of an individual has been, is being or is likely to be endangered;
- That the environment has been, is being or is likely to be damaged; and
- That information tending to show any matter falling within the matters above has been, is being or is likely to be concealed.



WHISTLEBLOWING POLICY

In order for a disclosure to be protected, as well as falling within one of the above categories, the whistle blower must believe that their disclosure is in the public interest.

Although not protected by abovementioned Act, Nuance also encourages the disclosure of concerns relating to bribery, financial fraud or mismanagement, negligence, breach of internal policies and procedures, conduct likely to damage Nuance's reputation, unauthorised disclosure of confidential information, as well as other workplace specific concerns.

The following areas are not covered by this procedure:

- This procedure is not a substitute for the grievance procedures that exist. If an employee has complaints relating to their own personal circumstances, such as the way they have been treated at work, they should use the grievance procedures;
- The procedure is not a channel for employees to raise matters in relation to their terms and conditions of employment; and
- Anyone who abuses the procedure (for example by maliciously raising a concern they know to be untrue) will be subject to disciplinary action, as will anyone who victimises a colleague by raising a concern through this procedure.

If an employee is uncertain as to whether something is within the scope of this policy, they should seek advice from their Line Manager or the Human Resources Manager, as relevant.

## 4. Assurance to Employees

### 4.1. Employee Protection

If employees raise a genuine concern, they will not be at risk of any detriment as a result. Provided employees believe that they are acting in the public interest, it does not matter whether or not their concern proves to be well founded. However, the Company does not extend this assurance to anyone who acts from an improper motive or raises a matter they know to be untrue.

Detrimental treatment includes dismissal, disciplinary action, threats or other unfavourable treatment connected with raising a concern. If an employee believes that they have suffered any such treatment, they should inform their Line Manager or the Human Resources Manager, as appropriate, immediately. If the matter is not remedied they should raise it formally using the grievance procedures.

### 4.2. Employee Confidence

Nuance will not tolerate the victimisation of anyone raising a genuine concern and anyone responsible for such conduct will be subject to disciplinary action. Employees may decide that they want to raise a concern in confidence, and if they ask for their identity to be protected, it will not be disclosed without their consent.


WHISTLEBLOWING POLICY

If a situation arises where it is not possible to deal with the concern without revealing their identity (for instance because their evidence is needed in court), there will be a discussion as to whether and how the Company can proceed.

Nuance does not encourage staff to make disclosures anonymously. Proper investigation may be more difficult or impossible if the Company cannot obtain further information from them. It is also more difficult to establish whether any allegations are credible. This Policy does not cover a situation where information about malpractice is received anonymously. However, in these circumstances, discretion will be used in the investigation of such information.

## 5. Raising a Concern

### 5.1. Internal Management

If employees have a concern about malpractice, it is hoped they will feel able to raise it first with a higher level of management or the Human Resources Manager. They may be able to agree a way of resolving the concern quickly and effectively.

This may be done orally or in writing. Employees should state the facts of the matter clearly and may outline how they would like it to be investigated. If employees have a direct or personal interest in the matter, they should also tell the Company at this stage. If employees are writing, they should give details of how they can be contacted.

### 5.2. Alternative Contacts

If employees feel unable to raise the matter with someone in their senior management team or human resources, for whatever reason, they should raise the matter with the General Counsel. Alternatively the matter can be logged, anonymously, through EthicsPoint: (https://nuance.jiveon.com/docs/DOC-18038)

## 6. Handling a Concern

When a concern is reported, Nuance will look into it to assess what initial action should be taken. Employees may be required to attend meetings in order to provide further information. The employee raising the concern may be asked how they think the matter might best be resolved. If the Company believe that a concern falls more properly within the other Company policies (e.g. Grievance Policy) the employee will be informed of this.

While the purpose of this Policy is to enable Nuance to investigate possible malpractice and take appropriate steps to deal with it, the Company will give employees as much feedback as is possible and appropriate in the circumstances. Please note, however, that the Company may not be able to respond with the precise action that is being taken where this would infringe a duty of confidentiality owed by the Company to someone else or would otherwise prejudice the Company's investigations. Employees should treat any information about the investigation as confidential.


WHISTLEBLOWING POLICY

## 7. External Disclosures

The aim of this policy is to provide an internal mechanism for reporting, investigating and remedying any wrongdoing in the workplace. In most cases employees should not find it necessary to alert anyone externally.

The law recognises that in some circumstances it may be appropriate for employees to report their concerns to an external body such as a regulator. Nuance strongly encourages employees to seek advice before reporting a concern to anyone external. The independent whistleblowing charity, Public Concern at Work, operates a confidential helpline. They also have a list of prescribed regulators for reporting certain types of concern.

Whistleblowing concerns usually relate to the conduct of the Company's staff, but they may sometimes relate to the actions of a third party, such as a customer, supplier or service provider. In some circumstances the law will protect employees if they raise the matter with the third party directly. However, Nuance encourages employees to report such concerns internally first, using the procedure outlined above.